IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROLAND McNEIL,<br><br>          Plaintiff,<br><br>     v.<br><br>KENNECOTT UTAH COPPER CORP,<br>a Delaware Corporation,<br><br>          Defendant. | Case No. 2:08-CV-41-DAK-SA<br><br><br>**REPORT AND RECOMMENDATION** |

Before the court is Defendant's Motion for Summary Judgment filed on March 19, 2009. (Docket Entry #24.)  Plaintiff filed his complaint, asserting claims of wrongful termination, conspiracy, slander, blasphemy, harassment, retaliation, and discrimination based on race, color, and religion.  (Docket Entry #2, Ex. A.)  Defendant argues that summary judgment is appropriate for numerous reasons.  First, Defendant argues that Plaintiff's state law claims of wrongful termination and conspiracy are preempted by the Utah Antidiscrimination Act ("UADA"). (Docket Entry #25, at 1.)  Further, Defendant argues that any UADA claims Plaintiff is attempting to advance in this action were terminated by Plaintiff's decision to pursue his federal remedies under Title VII.  (Docket Entry #25, at 2.)

Second, Defendant argues that Plaintiff's Title VII discrimination and retaliation claims surrounding his termination must be dismissed because (1) Plaintiff cannot establish a *prima facie* case of discrimination or retaliation; (2) even if Plaintiff could establish a *prima facie* case, Kennecott terminated Plaintiff's employment for a legitimate business reason; and (3) Plaintiff cannot show that his termination was a pretext for discrimination or retaliation.  (Docket Entry

1

#25, at 3-8.)  Regarding his hostile work environment claim, Defendant asserts that such fails

because Plaintiff's work environment was not racially hostile.  (Docket Entry # 25, at 8-11.)

Finally, Defendant argues that Plaintiff's slander and "blasphemy" claims should be dismissed

because Plaintiff has alleged no defamatory statements, and, in the alternative, any alleged

defamatory statements would be protected by both the absolute and conditional privileges.

(Docket Entry # 25, at 12-16.)

        The court has carefully reviewed the parties' memoranda and exhibits and recommends

that Defendant's Motion for Summary Judgment be granted because there is no genuine dispute

of any material facts and Defendant is entitled to judgment as a matter of law.  *See* Fed. R. Civ.

P. 56(c).

## BACKGROUND

        Plaintiff's complaint does not allege any facts as to the circumstances surrounding his

termination from Defendant's employ.  In addition, Plaintiff did not file a timely response to

Defendant's Motion for Summary Judgment contesting these facts.

        Plaintiff filed this action in Third District Court on January 9, 2008.  (Docket Entry #2, ¶

2.)  Defendant removed this action, pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1441(b), on

January 15, 2008, stating that this court has original jurisdiction due to allegations of a violation

of Title VII of the Civil Rights Act of 1964.  (Docket Entry #2, ¶¶ 3-4, 6.)  Plaintiff filed a

Motion to Compel Discovery on September 11, 2008, alleging that Defendant was withholding

information requested in discovery, particularly information regarding Defendant's current and

former employees.  (Docket Entry #11.)  In response, Defendant filed a memorandum in

opposition to Plaintiff's motion and a Motion for Temporary Protective Order.  (Docket Entries

#12-15.)  Because of Plaintiff's past conduct, Defendant questioned Plaintiff's motives behind

seeking to obtain employee records.  (Docket Entry #15.)  After a hearing on the motions on

October 30, 2008, this court denied Plaintiff's Motion to Compel and reserved judgment on

Defendant's Motion for Temporary Protective Order.  (Docket Entries #17-18.)

Defendant filed this Motion for Summary Judgment on March 19, 2009.  (Docket Entry

#24.)  Motions for Extension of Time to answer Defendant's motion were filed by Plaintiff on

April 17 and 20, 2009, and were denied on April 21, 2009.  (Docket Entries #30, 31, 32.)

Plaintiff filed an untimely objection to the denial of his Motion for Extension of time on May 18,

2009.  (Docket Entry #35.)  Plaintiff also filed an untimely response to Defendant's Motion for

Summary Judgment and a Motion for Leave to File a Late Response two days prior to oral

argument.  (Docket Entries #37, 38.)  Plaintiff's Motion for Leave to File a Late Response gave

no reason for the late filing and was denied by the court.  (Docket Entry #40.)  Plaintiff's

untimely response to Defendant's Motion for Summary Judgment was not considered by the

court as it was filed late.  (Docket Entry #40.)  Plaintiff also filed a Motion to Strike Exhibit 17

from Defendant's Motion for Summary Judgment.  (Docket Entry # 36.)  Oral Argument was

held before Judge Alba on July 8, 2009, with Plaintiff appearing *pro se* and counsel for

Defendant present.  (Docket Entry #40.)

This case was referred to United States Magistrate Judge Samuel Alba by United States

District Judge Dale A. Kimball, under 28 U.S.C. § 636(b)(1)(A), on September 24, 2008, and

was subsequently modified to refer this case under 28 U.S.C. § 636(b)(1)(B) to hear all

dispositive matters up to and including this Report and Recommendation.  (Docket Entries #16,

26.)

Plaintiff began working for Defendant in October 2006, where he was hired to drive haul

trucks at Defendant's mine.  (Docket Entry #25, ¶ 1.)  Plaintiff, like some other haul-truck

3

drivers and employees at Defendant's mine, used his own hand-held Walkie Talkie radios to engage in personal conversations with co-workers during his shift.[1]  (Docket Entry #25, ¶ 3.) Plaintiff claims that other employees used coarse language on the Walkie Talkies which he found to be offensive.  (Docket Entry # 25, ¶ 5.)

According to Plaintiff, his problems with the Walkie Talkies began on January 16, 2007, when Plaintiff claims that Gerald Mikich, another truck driver at the Mine, on one occasion used the term "black dog" in reference to Plaintiff while talking to John Ogden, another truck driver at Defendant's mine.  (Docket Entry #25, ¶ 6.)  Mr. Ogden denied that the term "black dog" was used in reference to Plaintiff and instead indicated that the term "black dog" was in reference to a hallucination seen by sleep-deprived truckers.[2]  (Docket Entry #25, ¶ 7.)  Claiming that they were referring to him, Plaintiff asserts that he responded to the "black dog" discussion on his Walkie Talkie by stating, "Where I'm from, people get killed for less than that."  (Docket Entry #25, ¶ 9.)

While working at Defendant's mine, Plaintiff developed a close friendship with Allen Fossat, a co-worker, with whom Plaintiff would often sit and talk before the start of their shifts. (Docket Entry #25, ¶ 11.)  Mr. Fossat began giving Plaintiff rides to work after Plaintiff's car broke down.  (Docket Entry #25, ¶ 11.)  According to Mr. Fossat, on the day the "black dog" comments were made over the radios, Mr. Fossat gave Plaintiff a ride home.  (Docket Entry #25, ¶ 12.)  Upon discussing the incident with Plaintiff, Mr. Fossat stated that Plaintiff felt that Mr. Fossat was siding with Mr. Mikich and Mr. Ogden, and he screamed at Mr. Fossat "all the way

---

[1] The Walkie Talkies were not part of Defendant's radio communication system at Defendant's mine.  (Docket Entry # 25, ¶ 4.)
[2] According to Defendant, sometimes when a truck driver has been driving all night, he or she may see a shadow that looks like an animal running across the road.  This shadow is referred to as a "black dog."  (Docket Entry #25, ¶ 7.)

home." (Docket Entry #25, ¶ 14.)  Mr. Fossat stated that Plaintiff made threats of violence against his co-workers on that occasion.  (Docket Entry #25, ¶ 14.)

Plaintiff claims that over the next several months, various employees made threatening and racial statements on their Walkie Talkies.  (Docket Entry #25, ¶ 20.)  When asked to explain the comments, however, Plaintiff was unable to point to any racial animus or explain how the comments related to him.  (Docket Entry #25, ¶ 20.)  Plaintiff stated that he was offended by statements made over the Walkie Talkies but affirmed that these statements were not racially based and did not refer to him.  (*See* Docket Entry #25, ¶¶ 21-28, 30.)

Plaintiff reported the alleged racial comments to Defendant's Speak-OUT line, an avenue by which Defendant's employees may file formal complaints about various employment matters. (Docket Entry #25, ¶ 31.)  Defendant conducted an investigation into Plaintiff's reported violations and interviewed "nearly all" of Plaintiff's co-workers.  (Docket Entry #25, ¶ 32.) Defendant's investigation revealed that Plaintiff had made widespread threats of violence against his co-workers and their families, both in person and over the radios.  (Docket Entry #25, ¶¶ 33-34, 36-38.)  Defendant also discovered that Plaintiff had brandished a knife to some of his co-workers and made threats against others.  (Docket Entry #25, ¶¶ 35, 38.)

After its investigation, Defendant suspended Plaintiff with pay while evaluating Plaintiff's further employment with Defendant.  (Docket Entry #25, ¶ 39.)  On May 21, 2007, after an investigatory hearing, Defendant terminated Plaintiff due to "multiple threats of violence . . . witnessed by numerous individuals" and because his "behavior violate[d] the Kennecott Utah Copper Corporation General Code of Conduct."  (Docket Entry #25, ¶¶ 40-42.)  Plaintiff's union terminated an appeal after it examined Defendant's case and determined it did not merit arbitration.  (Docket Entry #25, ¶ 43.)

Defendant was criminally charged in connection with the March 22, 2007 burglary, assault, and kidnapping of co-worker Mr. Fossat.  (Docket Entry #25, ¶ 56; Docket Entry #25, Ex. 18; *see also* Docket Entry #25, ¶¶ 44-55.)  Defendant's son pleaded guilty to the attack on Mr. Fossat; Defendant is currently out on bail in connection with that attack.  (Docket Entry #25, ¶ 59.)

## ANALYSIS

Plaintiff is proceeding *pro se* and, as a result, the court construes his pleadings liberally and holds his pleadings to "less stringent standard[s] than formal pleadings drafted by lawyers." *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  However, this liberal treatment does not dismiss the requirement that *pro se* litigants "follow the same rules of procedure that govern other litigants."  *Id.* (internal quotation omitted).

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "When applying this standard, [the court] must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Bryan v. Farmers Ins. Exchange*, 432 F.3d 1114, 1124 (10th Cir. 2005) (citation omitted).  "In the employment discrimination context, there is no need for a trial if one party has failed to produce sufficient evidence to carry its burden of persuasion."  *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1116 (10th Cir. 2007). The non-movant, in a summary judgment motion, need not offer conclusive proof of discrimination, but he must show by proffer some evidence that is sufficient to carry his burden of persuasion, thus "*tending* to establish or show the material fact at issue."  *Id.* (emphasis in original).  Failure of a plaintiff to offer such evidence by way of affidavit or evidence beyond the

6

pleadings operates to grant the summary judgment motion if otherwise appropriate.  *See* Fed. R. Civ. P. 56(e)(2) (stating that "[i]f the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party").

Defendant argues that, first, Plaintiff's state law claims of wrongful termination and conspiracy are preempted by the UADA.  Similarly, any claims Plaintiff was asserting under the UADA were, in turn, terminated by Plaintiff's decision to pursue federal remedies under Title VII.  Second, Defendant argues that Plaintiff's Title VII claims must be dismissed because Plaintiff cannot establish a *prima facie* case or show pretext.  Further, Plaintiff cannot demonstrate that he worked in a racially hostile work environment.  Finally, Defendant argues that Plaintiff's slander and blasphemy claims must be dismissed because Plaintiff cannot establish a claim for defamation, and in any event, any alleged defamatory statements were privileged.

Plaintiff has not contested any facts contained in Defendant's motion and memoranda, nor has Plaintiff offered this court an alternate reading of the controlling law.  Therefore, the court should grant Defendant's Motion for Summary Judgment because there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law.  However, because Plaintiff is proceeding *pro se*, an analysis of the legal basis for the court's decision follows.

### A. Plaintiff's State Law Claims of Employment Discrimination

Plaintiff claims that he was discriminated against during his employment with Defendant. Plaintiff's state law claims based on alleged discrimination – i.e., his wrongful termination and conspiracy claims – are preempted by the UADA.  The UADA is the exclusive remedy for state-law employment discrimination claims based upon race, color, retaliation, and religion.  *See* UTAH CODE ANN. § 34A-5-107(15) (2008); *see also Gottling v. P.R., Inc.*, 61 P.3d 989, 992-93

(Utah 2002) (stating "that the plain language of section 34A-5-107(15) reveals an explicit legislative intent to preempt all common law remedies for employment discrimination").  The preemptive effect of the UADA bars Plaintiff's claims of wrongful termination and conspiracy.  *See Gottling*, 61 P.3d at 998 (holding that a common law cause of action for wrongful termination was preempted by UADA); *Tremelling v. Ogio Int'l, Inc.*, 919 F.Supp. 392, 396 (D. Utah 1996) (concluding that civil conspiracy claims that rely on public policy or civil rights violations are preempted by the UADA).

A plaintiff may pursue his or her claims under the UADA only through state administrative procedures.  *See Buckner v. Kennard*, 99 P.3d 842, 852 (Utah 2004) (explaining that "the exclusive remedy for an employee claiming a violation of the [UADA] is an appeal to the state Division of Antidiscrimination and Labor") (citation omitted).  Moreover, "[t]he commencement of an action under federal law for relief based upon any act prohibited by [the UADA] bars the commencement or continuation of any adjudicative proceeding before the [Utah Labor Commission] in connection with the same claims under [the UADA]."  UTAH CODE ANN. § 34A-5-107(16)(a).  "The transfer of a request for agency action to the Equal Employment Opportunity Commission . . . is considered the commencement of an action under federal law for purposes of Subsection (16)(a)."  UTAH CODE ANN. § 34A-5-107(16)(b).

In August 2007, Plaintiff filed a Request for Withdrawal of Charge of Discrimination and Request for a Notice of Right to Sue, requesting a termination of the administrative process and a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC"). (Docket Entry #25, Ex. 22.)  Accordingly, Plaintiff's administrative case was closed on September 10, 2007 (Docket Entry #25, Ex. 23), and on October 11, 2007, the EEOC sent

Plaintiff a Notice of Right to Sue (Docket Entry #25, Ex. 24).  Plaintiff then commenced this case.

Consequently, any claims Plaintiff may have had under the UADA were terminated by his choice to pursue his federal discrimination claims under Title VII.  It is unclear from Plaintiff's three-sentence Complaint whether he is attempting to pursue UADA claims in this action.  To the extent he is, such claims are barred and should be dismissed.

### B. Plaintiff's Federal Claims of Employment Discrimination

Plaintiff brings a claim for employment discrimination under Title VII of the Civil Rights Act of 1964.  Under that Title, an employer may not terminate from employment an individual because of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1).  Discrimination claims brought pursuant to Title VII without direct evidence are analyzed under a well-established burden-shifting scheme formulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).  Under the *McDonnell Douglas* scheme, Plaintiff must first establish a *prima facie* case of discrimination.  *Id.*  If Plaintiff establishes a *prima face* case, the burden shifts to Defendant to show a legitimate non-discriminatory reason for the adverse employment action.  *Id.*  Once Defendant satisfies this element, the burden shifts back to Plaintiff to demonstrate that Defendant's proffered reason for the adverse action was a pretext for discrimination.  *Id.* (citation omitted).  At that point, "the presumption of discrimination created by . . . [P]laintiff's prima facie case simply drops out of the picture, and . . . [P]laintiff then carries the full burden of persuasion to show that . . . [D]efendant discriminated on [an] illegal basis . . . ."  *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (citations and internal quotation omitted).

### 1. *Prima Facie* Showing of Racial Discrimination

To establish a *prima facie* case of termination on the basis of race, a plaintiff must demonstrate that: "(1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination." *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004) (citation omitted). For purposes of this motion, Defendant admits that Plaintiff is a member of a protected class and that he was qualified and satisfactorily performing his job. (Docket Entry #25 at 4.) However, beyond his general allegation, Plaintiff offers no evidence that he was terminated due to his race. This is especially probative given the evidence presented by Defendant that the reason for Plaintiff's termination was due to the widespread threats of violence made to his co-workers and their families and not due to Plaintiff's race. (Docket Entry #25, Ex. 25.) Plaintiff has failed to establish a *prima facie* case of racial discrimination.

### 2. Termination for a Legitimate Business Reason

Assuming that Plaintiff can establish a *prima facie* case of racial discrimination, Defendant has shown that Plaintiff was terminated due to a legitimate business reason. In response to Plaintiff's claims of harassment, Defendant conducted a thorough investigation. (Docket Entry #25, ¶ 32 & Ex. 8-9.) Defendant interviewed nearly all of Plaintiff's co-workers—almost thirty employees. (Docket Entry #25, ¶ 32 & Ex. 9.) Defendant's investigation revealed that Plaintiff had made widespread threats of violence against his co-workers, both in person and over the radio. (Docket Entry #25, ¶ 33 & Ex. 9.) Accordingly, in addition to its investigation of Plaintiff's discrimination claims, Defendant questioned Plaintiff's co-workers regarding his threats. (Docket Entry #25, Ex. 9.) In the course of its investigation,

Defendant learned that Plaintiff had brandished a knife to two co-workers and made violent threats against other co-workers.  (Docket Entry #25, ¶ 35 & Ex. 12.)

Based upon the nature and seriousness of Plaintiff's misconduct, Defendant suspended Plaintiff from work with pay, while Defendant completed the investigation and evaluated the status of Plaintiff's employment.  (Docket Entry #25, ¶ 39.)  Defendant concluded that Plaintiff's multiple threats, which were witnessed by nearly twenty employees, were a serious violation of Defendant's General Code of Conduct and warranted termination.  (Docket Entry #25, ¶ 41, Ex. 14.)  Consequently, on May 21, 2007, Defendant notified Plaintiff that his employment was terminated effective immediately.  (Docket Entry # 25, Ex. 14.)  In its termination letter, Defendant explained that Plaintiff's "multiple threats of violence were witnessed by numerous individuals" and his "behavior violate[d] the Kennecott Utah Copper Corporation General Code of Conduct."  (Docket Entry # 25, Ex. 14.)  Defendant has offered uncontested evidence that it had a legitimate business reason for terminating Plaintiff's employment.

### 3. Proffered Legitimate Business Reason for Termination as Pretext for Discrimination

"'[S]ummary judgment is appropriate where a plaintiff cannot meet the burden of proving that an employer's articulated nondiscriminatory reason for an alleged retaliatory action is pretextual.'"  *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007) (citation omitted) (alteration in original).  Further, "isolated racial comments are insufficient to establish pretext unless they can somehow be tied to the employment actions disputed in the case at hand." *Antonio*, 458 F.3d at 1184 (citation omitted); *See also Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994) (explaining that "the plaintiff must demonstrate a nexus between the allegedly discriminatory statements and the defendant's decision to terminate [him]") (citation omitted).

Plaintiff has identified a few offhand, isolated racial comments, none of which were made directly to Plaintiff.  (Docket Entry #25, Ex. 1 at 352, 363-68, 389.)  Additionally, none of the comments were made by co-workers who had any involvement in his termination.  Plaintiff has failed to persuade the court that a nexus exists between the statements and his termination.  Therefore, Plaintiff has not established evidence of pretext for his termination and summary judgment is appropriate.

### C. Plaintiff's Federal Retaliation Claim

Plaintiff claims that his termination was retaliation for reporting discriminatory behavior.  Claims of retaliation are analyzed under the same discrimination burden-shifting framework discussed above.  *See Antonio*, 458 F.3d at 1181 (outlining the *McDonnell Douglas* factors for "discrimination or retaliation").

### 1. *Prima Facie* Showing of Retaliation

To establish a *prima facie* claim for retaliation, Plaintiff must demonstrate that "(1) he . . . engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action."  *See Piercy*, 480 F.3d at 1198 (citations omitted); *See also Antonio*, 458 F.3d at 1182 (citations omitted).  In this case it is undisputed that termination is an adverse action.  *See, e.g., Fye v. Okla. Corp. Comm'n,* 516 F.3d 1217, 1228 (10th Cir. 2008) (stating "termination . . . is clearly an adverse employment action").  Therefore, the court need only to consider whether there was protected opposition and whether there was a casual connection between any protected opposition and Plaintiff's termination.

Plaintiff complained of alleged racial discrimination via Defendant's employee hotline.  (Docket Entry #25, ¶ 31.)  Protected activity includes "'oppos[ing] any practice made an

unlawful employment practice' by Title VII." *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1151 (10th Cir. 2008) (quoting 42 U.S.C.A. § 2000e-3(a)).  Plaintiff's complaint of discrimination would fall under a protected activity as it was complaining of racial discrimination in Defendant's workplace—racial discrimination being an unlawful employment practice under Title VII.  Plaintiff can also establish a causal connection between his complaint and Defendant's decision to terminate Plaintiff's employment because his termination was a result of an investigation into his complaint.

The burden then shifts to Defendant to show a legitimate, non-retaliatory reason for Plaintiff's termination.  *Vaughn*, 537 F.3d at 1152-53.  There is no dispute that Defendant has met its burden by proffering evidence that it discharged Plaintiff because of his threats. [3] (Docket Entry #25, Ex. 25.)  As explained above, the documentation in this case consistently demonstrates this as the reason for Plaintiff's termination.  Defendant, therefore, has satisfied its burden to show a legitimate, non-retaliatory reason for termination and Plaintiff must present the court with evidence that Defendant's reason for his termination was a pretext for retaliation.

Plaintiff may present evidence of pretext by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-[retaliatory] reasons Plaintiff's retaliation claim, therefore, should be dismissed."  *Vaughn*, 537 F.3d at 1153 (citation omitted) (alteration in original).  Plaintiff has not offered any evidence to the court that Defendant's

---

[3] The Seventh Circuit has determined that the termination of an employee by an employer does not constitute retaliation under Title VII when the employee's misconduct is discovered during the course of a racial discrimination investigation.  *See Hall v. Bodine Electric Company*, 276 F.3d 345, 359 (7th Cir. 2002) (explaining "[w]hile Title VII protects victims of [racial] harassment from being terminated in retaliation for reporting harassment, an employee's complaint of harassment does not immunize [him] from being subsequently disciplined or terminated for inappropriate workplace behavior").

proffered reason for termination is inconsistent or implausible.  On the contrary, Defendant has

offered to the court a wealth of evidence showing that Plaintiff's termination was based solely on

Plaintiff's threats of violence on Defendant's employees and their families.  (Docket Entry #25,

Ex. 25.)  Therefore, Plaintiff has failed to carry his burden to show that Defendants proffered

legitimate, non-retaliatory reason for his termination was pretext for discrimination.  As such,

summary judgment should be granted in favor of Defendant.

### D. Plaintiff's Harassment Claims

Plaintiff claims that he was harassed during his employment with Defendant.  "An

employer creates a hostile work environment when 'the workplace is permeated with

discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter

the conditions of the victim's employment and create an abusive working environment.'"  *Hall*

*v. U.S. Dept. of Labor Admin. Review Bd.*, 476 F.3d 847, 851 (10th Cir. 2007) (citation omitted).

The discriminatory conduct "must be extreme to amount to a change in the terms and conditions

of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Indeed, "'simple

teasing', offhand comments, and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the 'terms and conditions of employment.'"  *Id.*; *see also Johnson v.*

*Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir. 1981) (finding no violation of Title VII where

there was "no steady barrage of opprobrious racial comment" and noting that "[r]acial comments

that are merely part of casual conversation, are accidental, or are sporadic do not trigger Title

VII's sanctions" (citations omitted)).

The Tenth Circuit has explained that the court "must . . . examine [the] work

environment."  *Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995).  In

*Gross*, the court stated that "[i]n the real world of construction work, profanity and vulgarity are

not perceived as hostile or abusive.  Indelicate forms of expression are accepted or endured as normal human behavior." *Id.*  In this case, involving haul truck drivers, the Court evaluates Plaintiff's discrimination claim "in the context of a blue collar environment where crude language is commonly used." *Id.* at 1538.  Indeed, "[s]peech that might be offensive or unacceptable in a prep school faculty meeting, or on the floor of Congress, is tolerated in other work environments." *Id.*

Plaintiff notes in his deposition that he was subjected to "very unprofessional" and "very inappropriate" comments throughout his employment; but that few of the comments were directed at him and that he did not consider them racial.  (Docket Entry #25, ¶¶ 20-28 & Ex. 1 at 365.)  Plaintiff's own use of profanity and hostile and abusive language is also documented.  (*See e.g.* Docket Entry #25, ¶¶ 35-38.)  In reality, the record indicates that the occurrences noted were isolated and, while inappropriate, were far from pervasive and can hardly constitute a hostile work environment permeated with racial animus.  *See EEOC v. PVNF, LLC*, 487 F.3d 790, 798 (10th Cir. 2007) (explaining that isolated incidents of racial animus do "not establish a pervasively hostile work environment").  Furthermore, none of the alleged comments were sufficiently severe to alter the conditions of Plaintiff's employment.  *See Farager,* 524 U.S. at 788.

Further, during the investigation into Plaintiff's complaint of discrimination, when Defendant discovered a violation of Defendant's Code of Conduct by other employees, disciplinary measures were taken.  (Docket Entry #25 at ix n.4-5, 12 n.11.)  Thus, Defendant was not the only employee disciplined during this investigation.

### E. Plaintiff's Defamation Claims

Plaintiff claims that defamatory statements were made about him.  Under Utah law, a plaintiff "must identify the defamatory statement either by its 'words or words to that effect;' general conclusory statements are inadequate." *Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 800 (D. Utah 1988) (citation omitted); *Zoumadakis v. Uintah Basin Med. Cntr.*, 122 P.3d 891, 892-93 (Utah Ct. App. 2005) (stating that "[i]n the context of defamation, an allegation of certain derogatory and libelous statements is insufficient; a complaint for defamation must set forth the language complained of . . . in words or words to that effect") (citations, quotation, and brackets omitted).  "The purpose of the particularity requirement in pleading defamation is to allow the court to decide if the statement is defamatory and to allow the defendant to formulate a defense." *Boisjoly*, 706 F. Supp. at 800 (citations omitted).

Plaintiff has failed to plead with particularity the defamatory statements.  Without identifying the defamatory statements, the court is unable to examine the nature of the allegation. For these reasons, Plaintiff's defamation claims should be dismissed.  In the alternative, to the extent Plaintiff is alleging that his co-workers' statements made to Defendant in direct response to Defendant's investigation of Plaintiff's violent conduct and his discrimination complaints are slanderous, the court analyzes Plaintiff's defamation claim.

Assuming that Plaintiff's co-workers' statements were false and damaging, those statements are still protected by privilege.  "[F]alse and defamatory statements are not actionable if they are protected by a legal privilege." *DeBry v. Godbe*, 992 P.2d 979, 983 (Utah 1999). Privileges are recognized "in circumstances where communication must be wholly open, frank, and unchilled by the possibility of a defamation action." *Id.*

### 1. Absolute Privilege

An absolute privilege extends "'to persons whose special positions or status requires that they be as free as possible from fear that their actions in their position might subject them to legal action.'" *O'Connor v. Burningham*, 165 P.3d 1214, 1222 (Utah 2007) (citation omitted). The absolute privilege "is specifically bestowed upon those who make statements 'during or in the course of a judicial proceeding' and exists for the purpose of preserving both the integrity of the judicial proceeding' and the associated quest for the ascertainment of truth that lies at its heart." *Id.* (citation omitted). The absolute privilege applies if: (1) the alleged defamatory statement was made during or in the course of a judicial proceeding, (2) the statement has some reference to the proceeding's subject matter, and (3) the party claiming the privilege has been acting in the capacity of a judge, juror, witness, litigant, or counsel in the proceeding at the time of the alleged defamation. *See id.* at 1222-23 (citation omitted).

The term "judicial proceeding" should be given an "expansive" interpretation to include a broad category of statements. *See id.* at 1223. A statement, therefore, "'may qualify as made during or in the course of a judicial proceeding [even] if the communication is preliminary to a proposed judicial proceeding.'" *Pratt v. Nelson*, 164 P.3d 366, 376 (Utah 2007) (citation omitted).

Plaintiff's co-workers' statements in this case are absolutely privileged because they were made to counsel for Defendant in anticipation of possible litigation. After Plaintiff complained of racial harassment, Defendant's legal counsel interviewed many of Plaintiff's co-workers, each of whom was a potential witness. (Docket Entry #25, Ex. 8.) The statements made by the co-workers were in response to Defendant's inquiries concerning the alleged racial discrimination. (Docket Entry #25, Ex. 8.) The statements made by Plaintiff's co-workers were

17

preliminary to a judicial proceeding, were regarding the subject matter of the judicial proceeding and Plaintiff's co-workers were each potential witnesses.  Therefore, absolute privilege should extend to Plaintiff's co-workers and their statements.  Indeed, these are precisely the circumstances where absolute privilege should protect–instances in which witnesses must be able to speak freely without fear of retaliation or liability.

### 2. Qualified Privilege

In the alternative, Plaintiff's co-workers enjoy a qualified privilege for their statements to Defendant's counsel regarding the investigation into Plaintiff's allegations of discrimination. Communications between an employee and an employer are protected by a conditional privilege when they are made about a matter in which both the speaker and the recipient had an interest or duty and the "communication was made in the performance of that duty."  *Sowell v. IML Freight, Inc.*, 519 P.2d 884, 885 (Utah 1974) (citation omitted).

Due to Defendant's interest in protecting the health and safety of its employees and in ensuring that Defendant's workplace was conducive to that interest, the statements offered by Plaintiff's coworkers concerning Plaintiff's allegations are entitled to qualified immunity as pertaining to an interest or duty in communicating the threats made by Plaintiff to his co-workers.

## RECOMMENDATION

Based upon the above analysis, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment (Docket Entry #24) be **GRANTED**.  **IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Leave to File a Late Response (Docket Entry #37) be **DENIED**.  **IT IS FURTHER RECOMMENDED** that Plaintiff's Motion to Strike (Docket Entry #36) be **DENIED** as moot.

Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same.  The parties are further notified that they must file any objections to the Report and Recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within ten (10) days after receiving it.  Failure to file objections may constitute waiver of those objections on subsequent appellate review.

DATED this 20th day of July, 2009.

BY THE COURT:

_____
Samuel Alba
United States Magistrate Judge

19